**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WHAM-O HOLDING, LTD. AND INTERSPORT CORP. D/B/A WHAM-O, <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. 26-cv-3573 |

**COMPLAINT**

WHAM-O HOLDING, LTD. and Intersport Corp. d/b/a WHAM-O ("Plaintiffs" or "WHAM-O"), by and through their undersigned counsel, hereby file this Complaint against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A hereto (collectively, "Defendants") and allege as follows:

**I.      Jurisdiction And Venue**

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. §§ 1331 and 1338(a)-(b).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3)(i) and (ii), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

4.      In addition, Defendants' illegal counterfeiting and infringement actions have caused and continue to cause injury to Plaintiffs in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

5.      For example, Defendant Internet Stores offer for sale and accept orders of counterfeit products from, and offer to ship such counterfeit products to, New York addresses located in this Judicial District.

6.      Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District by, among other things, accepting payment through accounts with online marketplace payment processor platforms such as PayPal and Shop Pay (the "User Account(s)"), as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them.  It is through and via

these platforms that consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, can communicate with Defendants regarding their listings for counterfeit products, and can place orders for, receive invoices for and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), thus establishing Defendants' regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    **Parties**

7.    Plaintiff Intersport Corp. d/b/a WHAM-O is a California corporation and serves as the sales, marketing, design, and distribution arm for WHAM-O products in the Americas, with a place of business at 966 Sandhill Avenue, Carson, California 90746.  Plaintiff WHAM-O HOLDING, LTD. is a foreign company organized and existing under the laws of Hong Kong.

8.    WHAM-O has been engaged in the development, marketing, sale, and distribution in interstate commerce of HULA-HOOP-branded products. WHAM-O and its predecessors have exclusively used the HULA-HOOP trademark in connection with these products, which are among the most popular toys ever sold and which have achieved sales of hundreds of millions of units (the "HULA-HOOP Products").



https://wham-o.com/collections/HULA-HOOP®

9.      This action has been filed to combat online trademark infringers who trade upon Plaintiffs' reputation and goodwill and valuable intellectual property by selling and/or offering for sale unauthorized and infringing versions of the HULA-HOOP Products (hereafter "Infringing Products") in violation of Plaintiffs' federally registered trademark.

10.      WHAM-O is the registered owner of U.S. Trademark Registration No. 0,739,307 (hereinafter referred as the "HULA-HOOP Trademark").

| Trademark | Registration No. | Goods and Services |
|---|---|---|
| HULA-HOOP | 0739307 | US 022: PLASTIC TOY HOOPS. Class 028 |

11.      The HULA-HOOP Trademark is famous, is inherently distinctive and/or has acquired distinctiveness through extensive use in commerce.

4

12.    The HULA-HOOP Trademark registration is valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065, and constitutes prima facie evidence of the validity of the HULA-HOOP Trademark, Plaintiff's ownership thereof, and Plaintiffs' exclusive right to use the HULA-HOOP Trademark in commerce and otherwise pursuant to 15 U.S.C. § 1057(b).

13.    A true and correct copy of the registration certificate for the HULA-HOOP Trademark is attached as Exhibit 2.

14.    The HULA-HOOP Trademark has been the subject of substantial and continuous marketing and promotion by Plaintiffs.  Plaintiffs have and continue to market and promote the HULA-HOOP Trademark widely in the industry and to consumers.  Plaintiffs' promotional efforts include — by way of example, but not limitation — substantial print media, the WHAM-O website and social media sites, and point of sale materials.

15.    The HULA-HOOP Trademark has been continuously used and has never been abandoned. The WHAM-O trademark registration is valid, subsisting, and in full force and effect.

16.    Plaintiffs have invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the HULA-HOOP Trademark. As a result, products associated with the HULA-HOOP Trademark are recognized and exclusively associated by consumers and the public as being authentic products sourced from Plaintiffs.

17.    Plaintiffs have made considerable efforts to protect their interests in and to the HULA-HOOP Trademark. No one other than Plaintiffs and Plaintiffs' express licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the HULA-HOOP Trademark without the express written permission of Plaintiffs.

18.    Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States, including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and infringing versions of the HULA-HOOP Products to consumers within the United States, including New York and in this Judicial District.

### III.    **Factual Background**

19.    Prior to the mass proliferation of anonymous online marketplaces, Plaintiffs successfully enforced its intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The meteoric rise of online retailing, coupled with the ability of e-commerce site owner and operators to conceal their identities, has made it nearly impossible for effective enforcement actions to be undertaken by WHAM-O since availing itself of takedown procedures to remove Infringing Products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet.  Defendants' conduct is not accidental or negligent, but instead part of a deliberate and coordinated scheme to trade upon the goodwill associated with the HULA-HOOP Trademark. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed WHAM-O and its ability to police its rights against the hundreds of anonymous defendants that are selling illegal Infringing Products at prices below the cost of an original, authentic HULA-HOOP Product:

**PLAINTIFFS' OFFICIALLY LICENSED PRODUCT**



https://sixale.com/products/wham-o-hula-hoop-skipper-children-ankle-skip-jump-ball-sports-swing-toy-for-adults-kids-boys-girls-age-6-pink?_pos=1&_sid=c296caa3e&_ss=r

**COUNTERFEIT/INFRINGING LISTINGS**

20.    The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authentic HULA-HOOP Products.

7

21.     In an effort to illegally profit from the mass popularity of and extensive goodwill associated with the HULA-HOOP Trademark, Defendants have created numerous Seller Aliases and have designed them to appear to be selling authentic HULA-HOOP Products when in fact they are selling Infringing Products that are inferior imitations of HULA-HOOP Products that illegally trade on Plaintiffs' valuable intellectual property.

22.     Plaintiffs have suffered and continue to suffer immediate and irreparable harm through loss of control over their valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

23.     Defendants' systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to WHAM-O and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling Infringing Products.

24.     To be able to offer the Infringing Products at a price substantially below the cost of authentic HULA-HOOP Product, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping, requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

25.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

26.    In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

27.    Plaintiffs' investigation reveals the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

appearing to sell genuine HULA-HOOP Products, while knowingly selling Infringing Products that are unauthorized, inferior counterfeit imitations of authentic HULA-HOOP Products that illegally utilize the HULA-HOOP Trademark.

28.    Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 3.

29.    The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

30.    The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

31.    The Seller Aliases intentionally conceal Defendants' identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

32.    Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

33.    In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

34.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

35.    Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts,

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

including PayPal accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiffs' legitimate enforcement efforts.

36.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal and other similar accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

37.    Defendants, without any authorization or license from Plaintiffs, have knowingly, willfully, and deliberately counterfeited Plaintiffs' HULA-HOOP Trademark in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this Judicial District of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

<u>**Count I - Trademark Infringement and Counterfeiting**</u>
**(15 U.S.C. § 1114)**

38.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

39.    This is a trademark infringement action against Defendants based on their unauthorized use of counterfeit imitations of the federally registered HULA-HOOP Trademark in commerce in connection with the sale, offering for sale, distribution, and/or advertising of Infringing Products. The HULA-HOOP Trademark is distinctive. Due to Plaintiffs' substantial and continuous investment in quality control, brand management, and product development,

consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiffs and authentic HULA-HOOP Products offered, sold, or marketed under the HULA-HOOP Trademark.

40.    Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in its HULA-HOOP Trademark and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the HULA-HOOP Trademark and used spurious designations that are identical with, or substantially indistinguishable from, the HULA-HOOP Trademark on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

41.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiffs' exclusive rights in and to the HULA-HOOP Trademark through their systematic and deliberate participation in such unlawful activities.

42.    Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the HULA-HOOP Trademark to goods, packaging, websites, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or

13

are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which Defendants are not entitled in law or equity.

43.    These Defendants' unauthorized use of the HULA-HOOP Trademark on or in connection with the Infringing Products was done willfully and with notice and full knowledge that such use was not authorized or licensed by Plaintiffs, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiffs have developed in the HULA-HOOP Trademark through years of quality control and significant investment.

44.    Defendants' actions constitute willful counterfeiting of the HULA-HOOP Trademark in violation of 15 U.S.C. §§ 1114(1)(a) -(b), thus entitling Plaintiffs to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

45.    Defendants' continued, knowing, and willful use of the HULA-HOOP Trademark without Plaintiffs' consent or authorization constitutes intentional infringement of the HULA-HOOP Trademark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

46.    Plaintiffs have no adequate remedy at law, and if Defendants' actions are not immediately enjoined, Plaintiffs will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the HULA-HOOP Trademark, causing damages that are difficult to calculate with precision.

47.    The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Infringing Products including counterfeit HULA-HOOP Products.

## Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

14

48.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.     Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiffs.

50.     By using the HULA-HOOP Trademark in commerce in connection with the sale of Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing Products.

51.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and were undertaken with the intent to trade on the goodwill and reputation of WHAM-O, its HULA-HOOP Products, and the HULA-HOOP Trademark.

53.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## IV.     **Prayer For Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

15

1)    That Defendants, and each of their respective affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the HULA-HOOP Trademark or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized HULA-HOOP Product or is not authorized by Plaintiffs to be sold in connection with the HULA-HOOP Trademark;

b.  passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiffs and not approved by Plaintiffs for sale under the HULA-HOOP Trademark;

c.  committing any acts calculated to cause consumers to believe that Defendants' Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.  further infringing the HULA-HOOP Trademark and damaging Plaintiffs' goodwill;

e.  otherwise competing unfairly with Plaintiffs in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiffs to be sold or offered for sale, and which bear the HULA-HOOP Trademark;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell

16

products or inventory not authorized by Plaintiffs which bear the HULA-HOOP Trademark;

2)    That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)    Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiffs, which bear the HULA-HOOP Trademark, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiffs, which bear the HULA-HOOP Trademark; and

c.  take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)    That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages

for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)      In the alternative, that Plaintiffs be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)      That Defendants have:

   a.   willfully infringed Plaintiffs' rights in their federally registered trademark pursuant to 15 U.S.C. § 1114; and

   b.   otherwise injured Plaintiffs' business reputation and goodwill;

7)      That Plaintiffs be awarded actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

8)      That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

9)      Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.

Dated: April 30, 2026                            Respectfully submitted,

                                                 */s/ Shengmao Mu*
                                                 Shengmao Mu
                                                 NY No. 5707021
                                                 **WHITEWOOD LAW PLLC**
                                                 57 West 57th Street, 3rd and 4th Floors
                                                 New York, NY, 10019
                                                 Telephone: (917) 858-8018
                                                 Email: smu@whitewoodlaw.com

                                                 *Counsel for Plaintiffs*