UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHAM-O Holding, LTD and Intersport Corp., <br><br>                         Plaintiffs, <br><br> -against- <br><br> The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A, <br><br>                         Defendants. | 26-cv-3573 (AS) <br><br> <u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Before the Court is toymaker Wham-O's motion for a temporary restraining order (TRO) against a slate of anonymous defendants. The charge is that the defendants violated Wham-O's trademark protection in its mark "HULA-HOOP" by selling hoops online labeled as "Hula Hoops." For the following reasons, the Court DENIES the motion without prejudice. It GRANTS the motion to seal.

Wham-O's first claim is for trademark infringement and counterfeiting. 15 U.S.C. § 1114. Its second is for false designation of origin and unfair competition. 15 U.S.C. § 1125(a). The principal problem with both is that Wham-O has failed to show that it is "likely to succeed on the merits" with respect to either. *Zesty Paws LLC v. Nutramax Lab'ys, Inc.*, 157 F.4th 194, 197 (2d Cir. 2025) (standard for preliminary injunction); *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (standard for TRO essentially the same as that for preliminary injunction).

Start with the trademark infringement and counterfeiting. Both theories require a valid, protectable trademark. *Mattel, Inc. v. www.fisher-price.online*, 2022 WL 2801022, at *5 (S.D.N.Y. July 18, 2022) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)). But Wham-O hasn't shown that it's likely to be able to show that the mark HULA-HOOP is protectable. If present, defendants would be permitted to argue that HULA-HOOP is generic. If a mark is generic, it isn't protected by the Lanham Act. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–10 (2d Cir. 1976). "A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species." *Id.* at 9. "[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Id.*

"In determining whether a particular mark is generic, courts in the Second Circuit look to several factors, including evidence of: (1) generic use of the term by competitors which plaintiff has not challenged or generic use by plaintiff himself; (2) dictionary definitions, which may be relevant while not dispositive; (3) generic usage in trade journals or newspapers; (4) testimony of persons in the trade; and (5) consumer surveys." *Chum Ltd. v. Lisowski*, 2001 WL 243541, at *7 (S.D.N.Y. Mar. 12, 2001). "The question of whether a mark is, or has become, generic is generally one of fact." *A.V.E.L.A., Inc. v. Estate of Marylyn Monroe, LLC*, 241 F. Supp. 3d 461, 478 (S.D.N.Y.

2017) (quotation omitted). And it's one that Wham-O would have to address at trial to prevail in this case. At the outset, Wham-O is entitled to a presumption that its trademark is valid because it's been federally registered. *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 214 (S.D.N.Y. 2001).

Nevertheless, on this application, Wham-O's evidence doesn't carry its burden of showing that it's likely to succeed in showing that its mark is more than generic. The sole evidence submitted by Wham-O to support the proposition that consumers associate HULA-HOOP with Wham-O takes the form of assertions in the declaration of one of its consultants. *See, e.g.*, Dkt. 11 ¶ 9 ("[P]roducts associated with the HULA-HOOP Trademark is [sic] recognized and exclusively associated by consumers, the public, and the trade as being products sourced from WHAM-O."). But the Court can't just take a plaintiff's word for it when, as here, the Court is confronted with an ex-parte proceeding in which no defendant is given the chance to respond (Wham-O asks the Court to seal the defendants' identities such that they themselves can't learn of the suit). Dkt. 6.

Wham-O's other submissions similarly find no purchase. It submitted a series of online listings of the allegedly infringing products. Dkt. 14. Each of these products uses the phrase "hula hoop" (or some close variant like "Hula Circle Hoop") along with a picture of a hoop. Some of the hoops appear to be firmer, others bendier—but none uses the Wham-O name. Instead, each of listings uses the phrase "hula hoop" to pick out the *type* of product that's being sold. For example: a "weighted Hula Hoop," *id.* at 4; a "Weighted Soft Fitness Hula Hoop," *id.* at 5; a "Spring Soft Hula Hoop," *id.* at 6; or a "Body Building Hula Hoola [sic] Hoop." *Id.* at 7. Thus, the phrase "Hula Hoop" in these listings operates only as "the genus of which the particular product is a species." *Abercrombie & Fitch*, 537 F.2d at 9. What's missing from Wham-O's submissions is the type of evidence that's typically used to show whether a mark is generic, like dictionary usage, trade person testimony, or customer surveys.

While some dictionaries do observe that "Hula-Hoop" is a trademarked brand name, they also note that a "hula hoop" is the thing itself: "a large plastic ring that you spin around your waist by moving your hips." *See, e.g.*, Oxford Advanced American Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/american_english/hula-hoop (last visited May 21, 2026). That's generic. Of course, Wham-O isn't contending that a competitor can't sell hoops meant for people to spin around their waists through kinetic movement. Its argument is that any competitor has to say that entire mouthful to make those sales while also informing its customers of what's for sale (the proverbial "genus"). Maybe the record at trial will show that Wham-O is right. But the current record doesn't support the extraordinary relief of an ex-parte TRO.

Similar issues plague Wham-O's unfair competition claim. As Wham-O points out, this turns on whether there is a false or misleading representation that "is likely to cause confusion as to the origin of goods." *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 250 (S.D.N.Y. 2004) (cleaned up and quotation omitted). But none of the listings provided by Wham-O makes any allusion to the company; the only way that a consumer might be confused is if she *already* associated "hula hoop" with Wham-O. And, because Wham-O hasn't submitted any evidence to that effect, it hasn't satisfied its burden on a TRO to show likelihood of success on the merits.

The Court is conscious that it has raised concerns with Wham-O's motion that no party has raised. But in these ex-parte proceedings, no other party *can* raise them. As the Court previously observed, "many courts simply rubber stamp these applications to get them off their docket." *Those Characters From Cleveland, LLC v. Individuals*, 2026 WL 1103167, at *3 (S.D.N.Y. Apr. 22,

2026). But before the Court dispenses such "extraordinary relief," *id.*, it needs to be sure that the standard for a TRO is satisfied. Wham-O is welcome to file additional supporting materials and another motion if it believes that it can satisfy that standard.

The Clerk of Court is respectfully directed to terminate Dkts. 6 and 9.

SO ORDERED.

Dated: May 22, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge

3